UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APEX SYSTEMS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> KIMBERLY J. SPERBER, an individual, <br><br> Defendant. | Case No.: 3:23-cv-02011-BEN-SBC <br><br> **ORDER DENYING APEX SYSTEMS, LLC'S EX PARTE MOTION** <br><br> **[ECF No. 16]** |

## I. INTRODUCTION

Plaintiff Apex Systems, LLC ("Apex") brings its Complaint for Injunctive Relief against Defendant Kimberly J. Sperber ("Sperber") alleging breach of contract, as well as state and federal statutory violations. *See generally* ECF No. 1. Before the Court is Apex's *Ex Parte* Motion seeking to: (1) advance the hearing for Apex's Motion for Preliminary Injunction, (2) commence immediate discovery from any source; (3) set a scheduling conference; and (4) set an early neutral evaluation. ECF No. 1 ("Compl.").

## II. BACKGROUND

Apex brings this action seeking injunctive relief against Sperber, including specific performance of an alleged agreement between the parties.

A. **Statement of Facts**[1]

Apex alleges that its former employee of sixteen years, Sperber, was promoted to Associate Industry Director in February 2023. Compl. at 5,[2] ¶ 13. Sperber was given limited and controlled access to Apex's electronically stored information, including confidential information. *Id.* at 5, ¶¶ 14–15. Apex alleges that "[t]hroughout her employment, Sperber repeatedly promised and assured Apex that she would safeguard Apex's information assets." *Id.* at 6, ¶ 18. "Most recently, on February 21, 2023, Sperber entered into a Confidentiality, Nonsolicitation and Nondisclosure Agreement (the "Agreement"). *Id.* "The agreements also function to protect the proprietary and confidential data belonging to Apex's clients . . . ." *Id.* In addition to promising not to directly or indirectly divulge confidential information, Sperber also promised not to remove or retain the confidential information, and to return all company property, records and information upon termination of her employment. *Id.* at 6–7, ¶ 18.

In July 2023, a pricing issue arose with a key Apex client. *Id.* at 7, ¶ 19. Apex responded with an audit to investigate the complaint. *Id.* "On July 20, 2023, following the outcome of the audit, Apex provided Sperber with a Critical Review as part of a coaching improvement plan because Apex had concluded that Sperber's lack of oversight and leadership contributed to serious harm to Apex's business . . . ." *Id.* This included the loss of $300,000, the handover of 19 contractors to a competitor, the lost trust of a longstanding, key Apex customer, and the decision to discontinue business with this key customer." *Id.* at 7–8, ¶ 19. Apex provided Sperber an opportunity "to continue her employment and learn from these serious mistakes" but instead, "Sperber secretly began discussions to join a direct competitor." *Id.* at 8, ¶ 19. Sperber "started misusing her trusted access to Apex computer systems in order to secretly send confidential Apex records to her personal Gmail

---

[1] The Court omits certain allegations of fact as they are unnecessary to resolve the instant *Ex Parte* Motion.

[2] Unless otherwise indicated, all page number references are to the ECF-generated page number contained in the header of each ECF-filed document.

account." *Id.* "Apex was unaware of Sperber's secret activities during the two months after her Critical Review, but was losing confidence that Sperber was able or willing to move forward from her role in the serious mishandling of the key customer account which led to her Critical Review." *Id.* at 8, ¶ 20. "As a result, Apex terminated Sperber's employment on October 4, 2023." *Id.*

Within hours of her termination, Apex alleges it discovered that Sperber broke her promises and breached her duties to Apex regarding the confidential information. *Id.* at 8, ¶ 21. "For example, beginning in about July 2023 and leading up to and including her last day of employment on October 4, 2023, Sperber secretly removed Apex's Confidential Information in violation of Apex policies and the agreements she signed as a trusted employee of Apex." *Id.* "During this same time period, Apex is informed and believes that Sperber was in secret discussions to join HNM Systems, which provides IT staffing and consulting services in direct competition with Apex." *Id.* "Throughout that time, she was misusing her controlled access to Apex's computer systems to secretly copy and send to her personal Gmail account the confidential records of Apex and its customers." *Id.* "On October 19, 2023, Sperber announced on LinkedIn that she had started a new position as Vice President of Revenue Operations at HNM Systems—the same direct competitor she had been courting since receiving her Critical Review in July 2023." *Id.* at 11, ¶ 33. "At this time Apex does not know whether and to what extent Sperber has disclosed or used Apex information in connection with her work for HNM Systems, but Apex's investigation of these and related issues is continuing." *Id.* at 11–12, ¶ 34.

"At no point either during or after her employment termination was Sperber authorized by Apex to access, copy or take for her own personal use any property, records or information belonging to Apex." *Id.* at 9, ¶ 26. "Apex has made repeated requests that Sperber return all of Apex's Confidential Information and other data, records and materials. Sperber refused Apex's requests." *Id.* at 10, ¶ 27. "Apex continues to demand that Sperber cooperate in the verified return of all Apex property and records, and that Sperber accurately and completely reveal to Apex the extent of her removal, retention, use and

disclosure of Apex information, but Sperber refuses to do so." *Id.* at 11, ¶ 34.

The Complaint contains additional factual allegations and Sperber, in turn, alleges eight counterclaims against Apex. ECF No. 5. However, many of these allegations are omitted because they are not necessary to resolve Apex's *Ex Parte* Motion.

B. **Procedural History**

On October 30, 2023, Apex filed its Complaint against Sperber alleging: (1) breach of contract; (2) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; and (3) Unfair Business Practices, Cal. Bus. & Prof. Code § 17200. *See generally* Compl. On November 22, 2023, Sperber answered the Complaint and alleged counterclaims against Apex for: (1) sexual harassment, in violation of Gov't Code § 12940(j); (2) gender and sexual orientation discrimination, in violation of Gov't Code § 12940(a); (3) FEHA Retaliation, in violation of Gov't Code § 12940(h); (4) failure to prevent FEHA harassment, discrimination, and retaliation, in violation of Gov't Code § 12940(k); (5) injunctive relief/declaratory judgment; (6) whistleblower retaliation, in violation of Labor Code § 1102.5; (7) defamation per se, in violation of civil code §§ 45, 46; and (8) wrongful termination in violation of public policy. ECF No. 5. The parties subsequently filed a Joint Motion seeking an extension of time for Apex to respond to Sperber's counterclaims, which this Court granted. ECF Nos. 6, 8. On December 27, 2023, Apex answered Sperber's counterclaims. ECF No. 7.

On December 29, 2023, Apex filed a Motion for Preliminary Injunction, seeking a Court Order: (1) prohibiting Sperber from possessing, retaining, using, disclosing, and transmitting any Apex confidential information; (2) requiring Sperber to account for and immediately return to Apex all original documents, records, and materials containing or reflecting the Apex confidential information and all copies thereof; (3) requiring Sperber to submit her computers, smartphones, electronic devices, and the credentials to her personal email accounts to a third-party forensic expert of Apex's choosing at Sperber's expense to ensure that the Apex confidential information does not exist on those computers, smartphones, devices, or personal email accounts; and (4) prohibiting Sperber from

destroying, altering, transmitting, or moving any documents, in whatever form, that may contain or reflect any of the Apex confidential information. ECF No. 9-1. On January 12, 2024, Sperber filed an Opposition to Apex's Motion for Preliminary Injunction. ECF No. 10-1. On January 22, 2024, Apex filed a Reply in Support of its Motion for Preliminary Injunction. ECF No. 12.

On January 25, 2024, the Court continued the hearing on Apex's Motion for Preliminary Injunction to March 25, 2024. ECF No. 13. On the same day, Apex filed a Motion for Leave to File a First Amended Complaint. ECF No. 14. The Court set a hearing date for the Motion to Amend the Complaint on February 26, 2024. On February 9, 2024, Sperber filed an Opposition to Apex's Motion for Leave to Amend its Complaint. ECF No. 17.

On February 8, 2024, Apex filed an *Ex Parte* Motion for an Order: (1) advancing the hearing on the Motion for Preliminary Injunction; (2) permitting the parties to immediately seek discovery from any source; (3) setting a scheduling conference; and (4) setting an early neutral evaluation conference. ECF No. 16. On February 9, 2024, Sperber filed an Opposition to Apex's *Ex Parte* Motion. ECF No. 18.

### III. **LEGAL STANDARD**

"*Ex parte* applications are a form of emergency relief that will only be granted upon an adequate showing of good cause or irreparable injury to the party seeking relief." *AF Holdings LLC v. Doe*, No. 12-cv-01525-LAB-RBB, 2012 WL 5304998, at *3 (S.D. Cal. Oct. 24, 2012) (quoting *Clark v. Time Warner Cable*, No. CV 07–1797–VBF-RCx, 2007 U.S. Dist. LEXIS 100716, at *2, 2007 WL 1334965 (C.D. Cal. May 3, 2007)). "To be proper, an *ex parte* application must demonstrate good cause to allow the moving party 'to go to the head of the line in front of all other litigants and receive special treatment.'" *Shawarma Stackz LLC v. Jwad*, No. 21-cv-01263-BAS-BGS, 2022 WL 529255, at *1 (S.D. Cal. Jan. 14, 2022) (quoting *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995)). "[I]t must be established that the moving party is without fault in creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result of

excusable neglect." *Mission Power Eng'g Co.*, 883 F. Supp. at 492. "The opportunities for legitimate *ex parte* applications are extremely limited." *Greer v. Cnty. of San Diego*, No. 19-cv-378-JO-DEB, 2022 WL 104724, at *1 (S.D. Cal. Jan. 11, 2022) (quoting *Horne v. Wells Fargo Bank, N.A.*, 969 F. Supp. 2d 1203, 1205 (C.D. Cal. 2013)) (internal quotation marks omitted).

## IV.   DISCUSSION

Apex's *Ex Parte* Motion seeks to advance the hearing date on its Motion for Preliminary Injunction and contains various requests related to discovery.

### A.   Hearing Date for Apex's Motion for Preliminary Injunction

Apex argues that it will be irreparably harmed if it must wait until March 25, 2024 for its Motion for Preliminary Injunction to be heard. ECF No. 16-1 at 3–4. Apex's *Ex Parte* Motion reiterates the arguments for irreparable harm made its preliminary injunction briefing. *Id.* at 4–5. Essentially, Apex argues that Sperber stole thousands of confidential files from Apex during her final months of employment, before beginning to work for an Apex competitor. *Id.* at 3. Given the nature of the files and Sperber's refusal to return them, Apex argues it is at risk of its confidential files—detailing important business and client information—being disclosed to its competitor. *Id.* at 4–5. Sperber argues that Apex "offers no new argument or evidence to alter, change, amend or supplement any argument or evidence in its Motion for Preliminary Injunction." ECF No. 18. The Court agrees.

Apex's *Ex Parte* Motion simply repeats the arguments made in the preliminary injunction Motion—*i.e.*, that Apex has and will continue to suffer irreparable harm. Apex argues that because of this irreparable harm, the Motion must be heard as soon as possible, and at the latest, February 26, 2024. However, Apex never filed a motion for a temporary restraining order to indicate a sense of urgency. Apex also waited two weeks after the Court continued the initial hearing date to file the instant *Ex Parte* Motion seeking to advance the hearing.

In addition, Apex's Motion for Preliminary Injunction attaches various email communications between Apex and Sperber. On October 5, 2023, Sperber responded to

Apex's Cease and Disease Letter, informing Apex that she did not retain documents for any improper purpose or disclose any information to unauthorized persons. Sperber further stated: "It is, however, my understanding that I have a legal right under applicable California and federal law to retain for now certain documents related to the issues above." Ex. 3 to Declaration of Mark J. Payne, ECF No. 9-2 ("Payne Decl."), at 31–32. Apex responded on October 11, 2023, stating that Sperber did not have a right to retain any property or records belonging to Apex. *Id.* at 31.

Additional communications occurred throughout October and November. On October 17, 2023, Apex's counsel sent a letter to Sperber again seeking cooperation and the return/nondisclosure of the records at issue Ex. 4 to Payne Decl. at 34–35. On October 18, 2023, Sperber's prior counsel responded and asked that all further communications be sent to her. Sperber's counsel also advised that Sperber was not in possession of any of the materials Apex demanded and has no intention of using the materials for any competitive or otherwise prohibited purpose. Ex. 5 to Payne Decl. at 38–39. Sperber's counsel further informed Apex of Sperber's position that she was terminated as a result of her voicing legitimate concerns regarding unlawful financial discrepancies. *Id.* at 39.

Apex's counsel reached out again on October 30, 2023, regarding a number of issues, including the return of Apex's records (and potential arbitration). Ex. 7 to Payne Decl. at 51. Sperber's counsel responded on November 1, 2023, stating she was swamped and to give her a few days to go over everything. Ex. 8 to Payne Decl. at 53. Apex's counsel sent another email on November 7, 2023 asking to have a Rule 26(f) conference and about a stipulation to arbitrate the dispute. Ex. 10 to Payne Decl. at 59. On November 14, 2023, Apex's counsel reached out again noting that they had repeatedly tried to contact Sperber and her attorneys. Ex. 11 to Payne Decl. at 61. The email stated that Apex would be seeking *ex parte* relief on various issues, including an order requiring Sperber to identify and produce for forensic analysis all computers, personal data devices, phones, and electronic storage devices owned by or assigned to Sperber from May 1, 2023 to present on which she conducted business with Apex or stored/transferred Apex's information. *Id.*

However, no *ex parte* motion was filed.

On November 15, 2023, Sperber's prior counsel responded by informing Apex that her firm no longer represented Sperber and was not authorized to accept notice on her behalf. Ex. 12 to Payne Decl. at 63. On November 16, 2023, Apex's counsel sent a letter to Sperber's prior counsel demanding the immediate return of all records and information belonging to Apex. Ex. 13 to Payne Decl. at 66–67. On November 22, 2023, Sperber's new legal counsel sent a copy of Sperber's answer, affirmative defenses, and counterclaims to Apex's counsel. Ex. 14 to Payne Decl. at 69.

Per these email communications, Apex knew Sperber's position—*i.e.*, her belief that if she did have certain Apex's records, she could retain them—as early as October 5, 2023. Counsel for Sperber subsequently informed Apex that Sperber felt she was terminated for voicing concerns related to financial discrepancies. Then, after Apex made repeated attempts to contact Sperber's counsel, no substantive response was provided. On November 22, 2023, Apex was given Sperber's answer, defenses, and counterclaims. At this point, Sperber, on her own and through her counsel, had made clear that she was not going to agree to Apex's demands respecting the records at issue. If Sperber's alleged retention of documents is so urgent as to warrant the instant *Ex Parte* Motion, it is unclear why Apex waited until December 29, 2023 to file its Motion for Preliminary Injunction. It is also unclear why Apex did not file a motion for a temporary restraining order to demonstrate the urgent nature of the situation. And even after the original January 29, 2024 hearing date was continued, Apex waited another two weeks to seek the instant *Ex Parte* relief.

As a whole, Apex's urgency argument falls flat. Apex is essentially demanding that the Court hold their motion hearing on or before a particular date, without justifying its own delays thus far. Apex's actions throughout this litigation have not established the urgency of the matter, and the *Ex Parte* Motion provides no analysis as to the reason for the delays or whether such delays constitute excusable neglect. As such, Apex has not relieved itself of fault in creating the urgency it now claims. Based on Apex's multiple

delays—and because the *Ex Parte* Motion simply reiterates arguments made in the Motion for Preliminary Injunction—the Court **DENIES** Apex's *Ex Parte* Motion.  The hearing date for Apex's Motion for Preliminary Injunction remains set for March 25, 2024.

### B. Discovery Related Requests

Apex's *Ex Parte* Motion also contains several discovery related requests, including that the Court: (1) commence immediate discovery from any source; (2) set a scheduling conference; and (3) set an early neutral evaluation.  *See* ECF No. 16-1 at 5–6.  Since the filing of Apex's *Ex Parte* Motion, Magistrate Judge Steve B. Chu has set an Early Neutral Evaluation Conference and a Case Management Conference for March 6, 2024, requiring the parties to meet and confer and make initial disclosures pursuant to Federal Rule of Civil Procedure 26.  *See* ECF No. 21.  As such, Apex's requests to set the above conferences are **DENIED** as moot.  Any outstanding discovery issues can be addressed before Judge Chu once discovery has commenced.  Accordingly, Apex's request to allow the parties to commence immediate discovery from any source is **DENIED** as premature.

### V. CONCLUSION

For the above reasons, the Court **DENIES** Apex's *Ex Parte* Motion in its entirety.

**IT IS SO ORDERED.**

DATED:   February 16, 2024

**HON. ROGER T. BENITEZ**
United States District Judge